UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN GAFFEY and KEVIN GAFFEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) NO.: 04CV12354-RGS |
| | ) |
| ACADIA INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DOCUMENTS**

INTRODUCTION

  The Plaintiffs have filed a motion to compel the Defendant to produce documents, specifically Acadia's claim manual, as requested in two separate document requests. The Defendant has refused to produce the manual claiming the document is proprietary and confidential. The Defendant's cursory argument is not enough to withhold the documents sought by the Plaintiff.

FACTS

  In August of 2003, the Plaintiffs owned a 1999 Aquasport Osprey 225 Center Console boat. The Plaintiffs purchased a policy of insurance from the Defendant to protect said vessel.

  On August 4, 2003, Dale Friedman of Sea Dog Yacht Sales, Inc. contacted the Plaintiffs stating that he had a potential purchaser for the Plaintiffs' vessel. On August 11, 2003, Plaintiff, Kevin Gaffey, signed a purchase and sale agreement that was prepared by Sea Dog Yacht Sales for the sale of the Plaintiffs' vessel. Plaintiff, Brian Gaffey, never signed the purchase and sale agreement.

On August 13, 2003, a Sea Dog Yacht Sales employee inspected the Plaintiffs' vessel. On August 15, 2003, Sea Dog Yacht Sales was allowed to take custody of the Plaintiffs' vessel for the purposes of moving the vessel to Sea Dog Yacht Sales' facility in Salisbury, Massachusetts. The Plaintiffs' vessel was to be held at that facility until a closing occurred. On August 26, 2003, the Plaintiffs' vessel was stolen by Dale Friedman and given to a Pamela Jordon without the knowledge or consent of the Plaintiffs. No bill of sale was ever signed by the Plaintiffs and no closing occurred. The Plaintiffs' reported the theft of their vessel to the Police on August 29, 2003.

In September of 2003, the Defendant was notified of the theft of the Plaintiffs' vessel. On October 6, 2003, the Defendant denied coverage for the theft of the vessel. On October 28, 2003, the Plaintiffs received a letter from a Rhode Island attorney asserting that his client, Pamela Jordon, was entitled to the title of the Plaintiffs' vessel as Ms. Jordon had transferred funds to purchase the vessel to Sea Dog Yacht Sales. Pamela Jordon filed suit against the Plaintiffs in Rhode Island state court for the purposes of obtaining title to the Plaintiffs vessel. See *Jordan v. Gaffety, et. al.*, Rhode Island Superior Court Civil Action No.: WC2003-664.

The Plaintiffs filed a motion to dismiss for lack of personal jurisdiction in the Rhode Island state court action. The Rhode Island state court judge found that the deal between the Plaintiffs and Ms. Jordon was never consummated but ordered that the parties remain in status quo so that the Plaintiffs would not retake possession of the vessel. The Plaintiffs, without a vessel and without insurance coverage, mitigated their damages by settling with Ms. Jordan and her broker for a total of $12,000.00. The Plaintiffs expended approximately $9,120.61 in legal fees and costs to defend against the lawsuit filed by Ms. Jordan and to attempt to mitigate their damages.

The Yacht Policy in question states that the Defendant will cover theft when the entire yacht is stolen. The insured value of the Plaintiffs' vessel was $37,000.00, as a result, the Plaintiffs are owed approximately $34,120.61 which represents the offsets of the monies expended in legal fees and costs with the offset of the monies recovered. On September 15, 2004, the Plaintiffs again made demand for coverage in writing to the Defendant pursuant to M.G.L. c.93A and 176D for the theft of their entire vessel. As part of that demand, the Plaintiffs asserted, *inter alia*, that the Defendant was improperly handling the claim. The Plaintiff filed this action alleging breach of contract and violation of M.G.L. c. 93A and 176D.

The Plaintiff undertook discovery in this action by sending a interrogatories and document requests to the Defendant. See Exhibit "A" and "B" attached hereto. In response to Interrogatory Number 5, the Defendant stated that it maintains a "Claims Manual intended to be an informational tool to provide[] guidance in job performance and handling claims." See Exhibit "A" attached hereto. In the Plaintiffs' document request, the Plaintiffs asked for any and all manuals, instructions or directives concerning the handling or issuance of Reservation of Rights letters or issuance of Denial of Coverage letters. In both instances, the Defendant objected to producing documents as "it calls for the disclosure of confidential and proprietary information of Acadia Ins. Co." See Exhibit "B" paragraphs 16 and 17 attached hereto. The Plaintiff sent a second request for the production of documents that specifically asked in request number 1 "[t]he Claims Manual referred to in Acadia's Answer to Plaintiff's Interrogatory number 5 dated June 13, 2005." See Exhibit "C" attached hereto. The Defendant again objected repeating "the objection originally asserted in the Answer to Interrogatory No. 5 dated June 13, 2005, as well as the objections raised to Request Nos. 16 & 17 of Plaintiff's Request for Production of Documents dated June 14, 2005." See Id.

ARGUMENT

The scope of discovery under the Federal Rules is very broad. See Fed.R.Civ.P. 26(b)(1). Under the liberal standard set forth in that rule, "information is discoverable if there is any possibility it might be relevant to the subject matter of the action." See *EEOC v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass 1996). The issue in the Plaintiffs' chapter 93A claim is that the Defendant has acted unfairly and deceptively in handling the Plaintiffs' claims. It has been alleged by the Plaintiffs that the Defendant has also violated M.G.L. c. 176D. It is clear from Defendant's answer to interrogatories that such a document is available for use as a guide to handling a claim. See Exhibit "A" at answer number 5 attached hereto. The claims manual is certainly the only document identified by the Acadia that gives guidance to adjusters on how to handle claims. This is relevant to the Plaintiffs claim and the Plaintiff are without any other way to obtain the precise information that is contained in the claims manual.

The Defendant has failed to demonstrate that production of requested documents would be annoying, burdensome or completely irrelevant to thrust of litigation, the insured is entitled to discovery of the Defendant's insurance claim manual to test accuracy, veracity and fairness of the Defendant in handling the Plaintiffs' claim. See e.g. *Lavin v. A.G. Becker & Co.*, 60 FRD 684 (1973 ND Ill). The claims information is clearly germane to this case and cannot be concealed. The Plaintiff undertook steps to clearly request the information pursuant to the applicable rules. If the Defendant believed that it the manual is proprietary or confidential it should have sought a protective order of this material pursuant to Rule 26(c) instead of forcing the Plaintiffs to undertake this motion.

oppmemo.doc

CONCLUSION

The Plaintiff respectfully requests that this Honorable Court compel the Defendant to produce the Claims Manual immediately. Further, the Plaintiff asks that this Honorable Court award the Plaintiffs attorneys fees and costs pursuant to Rule 37(b)(2).

Brian Gaffey & Kevin Gaffey
By their attorneys

*/s/ Stephen M. Ouellette*
Stephen M. Ouellette, Esquire
BBO No.: 543752
David S. Smith, Esquire
BBO No.: 634865
Cianciulli and Ouellette
163 Cabot Street
Beverly, MA 01915
Tel: (978) 922-9933

CERTIFICATE OF SERVICE

I, David S. Smith, attorney for the plaintiff herein, hereby certify that I caused to have served a copy of the foregoing document upon Leonard Langer, attorney for the Defendant herein at Tompkins, Clough, Hirshon & Langer, P.A. 3 Canal Plaza, P.O. Box 15060 Portland, Maine 04112-5060 via regular mail, postage prepaid this 29th day of August, 2005.

David S. Smith, Esq.

oppmemo.doc