UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN GAFFEY and KEVIN GAFFEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO.: 04-CV-12354-RGS |
| | ) | |
| ACADIA INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

INTRODUCTION

The Plaintiffs, Brian and Kevin Gaffey have moved for Summary Judgment as to Count I
of the Plaintiffs' Complaint in that the Defendant, Acadia Insurance Company breached the
insurance contract by denying coverage for the theft of their recreational vessel, a 24 foot
Aquasport.  For the reasons set forth herein, the Gaffeys should have been afforded coverage for
this loss.  The Plaintiffs incorporate by reference their statement of facts in support of their
motion for partial summary judgment and their statement of confidential facts in support of their
motion for partial summary judgment.

SUMMARY OF THE FACTS

The Plaintiffs owned a recreational power boat that was insured by the Defendant.
Plaintiffs Statement of Facts (PSF) ¶ 1-5.  In August of 2003, the Plaintiffs were in the process of

selling the boat through a broker[1] to a third party for $27,000.00. PSF¶14-21. The closing date changed many times. PSF¶ 24-25.

The Plaintiffs went to the Broker's facility and learned that their vessel was not there. The reported the theft to the police. PSF¶ 26-31. The Plaintiffs later learned that the third party, a Pamela Jordan, was in possession of the vessel. Id. The Plaintiffs were told not to utilize self help to retake possession of the vessel. PSF¶43. The Plaintiffs submitted a claim to Acadia which was denied as not a covered loss. PSF¶33. The broker took the money from the third party, as well as others, and left the area.

Jordan instigated litigation in Rhode Island to force the Plaintiffs to transfer title to the vessel to her. PSF¶44-47. That litigation was dismissed for lack of personal jurisdiction over the Plaintiffs. Id. As part of the dismissal, the Rhode Island Court noted that no sale had taken place between the parties. Id. As part of the dismissal, the Plaintiffs were required to take no other action to retake possession of the vessel. Id. The Plaintiffs through their counsel mitigated their damages by selling the vessel to Jordan for $12,000.00 in March of 2004. PSF¶48.

ARGUMENT

    *a.    Summary Judgment Standard.*

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. See Fed.R.Civ.P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). Then the non-moving party must demonstrate that

---

[1] The broker was Dale Friedman of Sea Dog Yacht Sales. He stole many boats through deceit and money from many innocent people. After he took the money, he left the Massachusetts area. He was arrested and plead guilty to

"*every essential element* of its claim or defense is at least trial worthy." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir. 1991)(italics in original).

A dispute is genuine if it "may reasonably be resolved in favor of either party." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir. 1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under the applicable law." Id. The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Id. Moreover, "the standards are the same where . . . both parties have moved for summary judgment." *Bienkowski v. Northeastern Univ.,* 285 F.3d 138, 140 (1st Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure 2720, at 335-36 (3d ed. 1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the rule 56 standard.).

> b.    *Gaffeys Have Proved That There Is No Genuine Issue Of Material Facts, Their Vessel Was Stolen.*

Gaffey has the burden to prove sufficient facts to establish coverage. *Morrison Grain Co. v. Utica Mutual Ins. Co.,* 632 F.2d 424, 1982 AMC 658 (5th Cir. 1980). Those facts are that the policy was issued, that the loss occurred and that the loss was an event within the terms of the policy. See *Alexander, Ramsey & Kerr, Inc. v. National Union Fire Ins. Co.*, 104 F.2d 1006, 1939 AMC 923 (2nd Cir. 1939). With an all risk policy, a *prima facie* case is deemed established if the assured establishes that loss occurred during the term of the policy. See *Quattriocchio v. Albany Ins. Co.,* 1983 AMC 112 (N.D.Ca. 1982). It is not necessary to prove the precise and exact circumstances of the cause or causes of the loss: it is sufficient to establish by a

---

various crimes in the fall of 2005.

preponderance of the evidence that the loss was occasioned by a covered peril. *Roche v. Zurich Ins. Co.*, 1989 AMC 1826 (Ma.App. 1989) citing *Swift v. Union Mutual Insurance Co.,* 122 Mass. 573, 577 (1871).   Clearly, the "all risk" policy was issued by Acadia for the Gaffeys' vessel.  See PSF¶7-8.  A direct loss occurred in that Dale Friedman stole the Gaffeys' vessel. PSF¶1-30.  The theft of the vessel is a fortuitous loss.  See *Schoppa v. National Marine Underwriters, Inc.,* 56 Mass.App.Ct. 161, 775 N.E.2d 791 (2002).  The burden now shifts to Acadia to prove the loss came from a non-external cause or an exception.  See *Heindl-Evans, Inc. v. Reliance Insurance Co.*, 1980 AMC 2823 (E.D.V.A. 1979).

> c.    The Interpretation Of The Policy Must Be Read Such That The Entire Yacht
>        Was Stolen.

> The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous.  As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to report to rules of construction arises only when an ambiguity exists.  Courts may not create an ambiguity where none exists.  If an insurance contract is ambiguous it will generally be construed against the insurer who drafted it in order to promote coverage for losses to which the policy relates. This principle applies to all types of insurance policies including maritime policies.  The rule that insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability.

*The Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 1988 AMC 223 at 242-43 (2nd Cir. 1987).

The direct physical loss of the vessel was due to an external cause, which in this case is Dale Friedman's theft of the entire vessel.  PSF¶1-30.  The terms "theft" and "stolen" are not defined in the policy and must be given their plain and usual meaning[2].  PSF¶9.  Absent controlling federal maritime law or a determination that the interests of national uniformity require that a rule of federal maritime law be fashioned, the interpretation of a contract of marine

insurance in admiralty cases will abide state law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, 1955 AMC 467 (1955). There is no federal maritime law definition of these terms, application of Massachusetts law is necessary.

     d.     *Under Massachusetts Law, The Gaffeys' Vessel Was Stolen*.

     1.     <u>The facts surrounding the loss of the Gaffeys' vessel meets the case law definition of theft.</u>

The initial case concerning the definition of theft in an insurance policy appears in *Bloom v. Ohio Farmers Ins. Co.,* 255 Mass. 528, at page 530, 152 N.E. 345 (1926)*,* where the Court states theft is: "a taking with the intent to deprive the owner permanently of his property for the pecuniary benefit of the taker." In that case an unauthorized person took an automobile, drove it away, removed the spare tire, and then sought to dispose of the car in 60 feet of water in an abandoned quarry. Actually it failed to enter the water, and was recovered. The court held the evidence warranted a finding of theft of the car on the theory that the jury could find that the thief "discarded the car where he thought it would disappear forever lest it prove a valueless and dangerous possession." Id. at 530, 345. The Massachusetts Supreme Judicial Court continued to deal with defining theft in later cases.

In *Farnum v. Bankers & Shippers Ins. Co.*, 281 Mass. 364, 183 N.E. 718 (1933), the Court considered an auto theft case where the issue at trial is whether the individual driving the vehicle had permission to do so. The Court held that if the unauthorized user took the vehicle intending not to return it, then there was a theft, even if, afterwards the unauthorized user changed his mind. Id. at 368, 720. The word "theft" as used in an insurance policy is to be

---

[2] Merriam-Webster Online Dictionary defines theft as 1 a: the act of stealing; *specifically:* the felonious taking and removing of personal property with intent to deprive the rightful owner of it .... Stolen: to take or appropriate without right or leave and with intent to keep or make use of wrongfully ....

given the meaning attributed to it in common use.  Id.  See also *Rich v. United Mutual Fire Insurance Company,* 328 Mass. 133, 102, N.E.2d 431 (1951).

The first time the phrase "theft of the entire Yacht" is reported in a Massachusetts or First Circuit concerned the yacht MARIPOSA.  See *Feinberg v. Insurance Company of North America*, 260 F.2d 523 (1958).  The yacht MARIPOSA was secured at her dock one evening and found the next day approximately 90 feet away at another dock taking with water and several items of personal property had been removed.  The issue for the Court was whether there was a theft of the entire vessel or a like peril, loss or misfortune in an enumerated peril policy.  Id. at 525. After reviewing the *Bloom, Farnum,* and *Rich* decisions, the Court determined that under a strict interpretation of Massachusetts law there was no theft of the entire vessel, "a matter as to which [the First Circuit was] definitely in doubt...."  However, the Court interpreted the cases as establishing that the loss which befell the MARIPOSA was certainly very much "like" a theft.  Id. at 527.  Coverage was found under a different peril portion of the policy.

The most recent case involved by an "all risk" policy for a vessel that was left in a boat yard for repairs.  See *Schippa v. National Marine Underwriters, Inc.*, 56 Mass.App.Ct. 161, 775 N.E.2d 791 (2002).  While in the yard, employees or other third persons stripped the vessel of valuable equipment. That Court noted that the plain language of the policy and the reasonable expectations of the insured may be taken into account in construing the insurance contract.  Id. at 163, 793.  The Court did not have to reach the formal elements of "theft" as defined in *Bloom, Farnum, Rich* and *Swift v. American Universal Ins. Co.*, 349 Mass. 637, 212 N.E.2d 448 (1965). (the term theft "as the term is commonly understood, ... is the taking and carrying away of the personal property of another with the intent unlawfully to deprive that other permanently of the use of it." )  The *Schippa* Court liberally construed the policy's terms in favor of the insured

suggesting that the term "theft" should be construed liberally like in *Farnum, supra* as opposed to more limiting like in *Bloom, supra* as suggested should be the case in *Feinberg, supra.*

In the case at bar, a sale of a vessel did not occur because there was no closing and Gaffeys maintained possession of the title to the vessel.  Friedman did not have authority to remove the vessel from the Sea Dog facility.  Whether the evaluation of these facts occurs under *Bloom, Farnum*, or *Schippa* the Gaffeys vessel was stolen.  Friedman took and carried away the Gaffeys' vessel with the intent to unlawfully to deprive the Gaffeys permanently of the vessels' use.  The loss to their vessel was caused by a direct result of an external cause that resulted in the entire yacht being stolen.  See PSF¶ 10-32, 43-49.

2.   <u>The facts surrounding the loss of the Gaffeys' vessel meet the statutory definition of stealing and larceny.</u>

Massachusetts General Laws define stealing and larceny as the criminal taking, obtaining or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement and obtaining by criminal false pretenses.  M.G.L. c. 277 §39. The term "steal" is a term of art and includes criminal taking of personal property of another with intent to deprive owner permanently of use of it. *Commonwealth v. Kozlowsky*, 238 Mass. 379, 131 NE 207 (1921).  *Commonwealth v. Engleman*, 336 Mass. 66, 142 N.E.2d 406 (1957).   Clearly Friedman actions amount to larceny of the Gaffeys' vessel as he stole the vessel with the intent to deprive the Gaffeys permanently the use of said vessel.  Alternatively, it was stolen under false pretenses.

3.    Massachusetts and Rhode Island laws concerning vessel transfer and titling support the fact that the Gaffeys' never transferred title to Jordan, nor did Friedman have sufficient paperwork to transfer any indices of ownership to Jordan.

Massachusetts is considered a "title state" when it comes to boat ownership and registration.  The ownership of a titled vessel shall be evidenced by a certificate of title issued by the division of law enforcement.  See 323 CMR 1.03.  A certificate of title is required as proof of ownership of a titled motorboat.  Id.  No person may sell, assign, transfer, or otherwise dispose of an interest in a titled motorboat without delivering the transferee a certificate of title in the name of the transferor properly endorsed to show the transfer.  See 323 CMR 1.04.  No person may possess or sell a titled motorboat without an original title or a legally transferred title.  See 323 CMR 1.07.  A Person violating that section shall be fined $100.00 for the first offense. Id. Rhode Island has a Uniform Boat Titling Act whereby it has very similar laws concerning the transfer and titling of boats.  See R.I. Gen. Laws §46-22.1-1, *et seq*.

The Gaffeys' vessel was a Massachusetts registered vessel. See PSF¶5.  The Certificate of Title was held by Eastern Bank until Kevin Gaffey satisfied the lien.  See PSF¶3-4 and 32.  Ownership of the vessel could not be transferred until all of the state regulations and statutes were satisfied.  Dale Friedman had the vessel in his possession, however, he was not in possession of the requisite documents necessary to transfer title.  He was never authorized to transfer possession or ownership in the vessel to Jordan.  See PSF¶ 1-5, 14-32, 43-49.  Under any of the cases or statutes cited above, Friedman clearly stole the Gaffeys' vessel with the intent to deprive them permanently of their property and Friedman did so for his own personal benefit.

4.    Other Jurisdictions

In the case of *Imperial Insurance Co. v. Ellington*, 498 S.W.2d 368 (1973), a boat seller transferred title to his boat to a purchaser.  The purchaser gave the boat owner a check.  When

the boat seller learned that the check was no good, the purchaser and the boat could not be found. That Court stated that the facts supported the insurance company's contention that there was a sale but the facts also supported a theft of the property by the purchaser. The Court concluded that there had been a theft by false pretenses and that there was coverage for the loss under the "all risk" policy. Thus even if there was a sale of the Gaffeys' boat, something the Gaffeys deny occurred, coverage should be afforded.

        e.     *Acadia's Reasons For Denying Coverage Are Without Merit And Goes Against The Facts That Were Presented To It.*

Acadia's reason for denying the claim was quite simple, the theft that occurred as to the Gaffeys was the theft of money, not a boat. PSF¶ 34. Acadia believed that it could be inferred that Friedman had the authority to transfer the vessel to Jordan. PSF¶ 35-42. This was an assumption made by Claire Mullhaney who was the supervisor of the file and who also reviewed the denial of coverage letter. Id. Ms. Mullhaney made that assumption even though the Acadia Claims file on this matter had numerous references that the Gaffeys never authorized Dale Friedman or Sea Dog Yachts Sales to move the vessel from Sea Dog's facilities to any other location. Id. This assumption was also made by Ms. Mullhaney without any knowledge as to how one transfers title to a Massachusetts registered boat. Id. The Gaffeys clearly could not transfer ownership of that vessel until all of the Massachusetts and Rhode Island requirements were met. At the time of the theft, the Gaffeys were not entitled to any money as the closing had not taken place as was noted by the Rhode Island Superior Court. PSF¶ 45-47.

Acadia's secondary position was that the Gaffeys always knew where there vessel was located and they could have retrieved it. See PSF¶ 59. This position is disingenuous. First, the Gaffeys testified that they were advised by counsel and law enforcement personnel not to utilize self help. See PSF¶ 43. Second, they did not know precisely where the boat was located, only

that it was in Jordan's possession. See PSF¶ 28. Third, the Gaffeys were contacted by Jordan's attorney in October of 2003 and then shortly thereafter sued in Rhode Island by Jordan in order to obtain title. See PSF¶ 43-47. It is certainly reasonable to infer that had the Gaffeys attempted to exercise self help to retake their vessel, Jordan would have reported such a situation to the local police as she felt she was the rightful owner. As part of the dismissal of Rhode Island action, the Gaffeys agreed not to commence *in rem* action in Rhode Island to retake possession of the vessel. See PSF¶ 47.

All of this was pointed out to Acadia in the Plaintiffs' 93A demand letter. See PSF¶ 51. Yet Acadia maintained the earlier decision choosing to ignore the Rhode Island Superior Court decision concerning whether there was a sale between the parties. See PSF¶ 52, 54, 56.

Acadia's reliance upon *Pampegian v. Richmond*, 319 Mass. 216, 65 N.E.2d 316 (1946), quoting Restatement of Agency §71 is misplaced. From Jordan's prospective, Friedman had apparent authority to transfer possession of the vessel to her. However, Jordan is not the thief; Friedman is the thief with respect to the theft of the vessel. The *Pampegian* case does not stand for the proposition that a theft did not occur under these facts. That case stands for the fact that someone who innocently takes possession of a boat or money for value is not liable to the true owner when that owner is a victim of theft by an apparent agent. Gaffeys were insured for theft of their vessel. A closing never took place as contemplated by the parties whereby appropriate documents evidencing an exchange in ownership would be transferred simultaneously with money.

The *Pampegian* case does not address the elements of theft. It is not on point as to whether there is coverage in this case. It is not on point as to the relationship between Plaintiff and Friedman. It is on point as to Jordan's claim against the Plaintiffs for title to the vessel. But

10

it does not relieve Acadia's obligation under the policy for a direct loss caused by an external

cause, in this case, Dale Friedman.

> f.    *Acadia denied coverage in a similar loss, however, that owner had signed over the title to Sea Dog Yacht Sales a fact that should have caused Acadia to explore boat title issues further.*

Another individual sustained a similar loss at the hands of Dale Friedman and Sea Dog

Yacht Sales.  See PSF¶ 61; See also Plaintiffs Statement of Confidential Facts (PSCF) ¶ 62 to 68.

It was noted in the Gaffeys claim file that the difference between the two cases was that the

Gaffeys had not signed title over to Jordan.  See ¶PSF¶61; See also PSCF¶ at 66.  Acadia never

looked into what it took to transfer title of the vessel in Massachusetts or Rhode Island.  See PSF

¶ at 36-39.  Had Acadia looked into that matter further, it would have concluded that a sale had

not in fact occurred and that the vessel was stolen.

> g.    *As A Result Of Acadia's Denial Of Coverage, The Gaffeys' Have Been Significantly Damaged.*

The Policy in question is an "Agreed Value" policy.  The Agreed Value of the vessel was

$37,000.00.  As stated in the policy and confirmed by both Ms. Mullaheny and Ms. Taylor, in

the event of a theft of the vessel, Acadia should pay $37,000.00.  See PSF¶ 58.  In order to

mitigate their damages, the Gaffeys were forced to hire attorneys to deal with being sued over

ownership of the vessel in Rhode Island.  See PSF¶ 43-50.  As a result of their efforts, they

incurred $9,120.61 in attorneys' fees and costs.  They were able to recover a total of $12,000.00

from Jordan and Jordan's broker.  Id.  Therefore, the Gaffeys' damages are the $37,000.00 plus

$9,120.61 less the $12,000.00 recovered or $34,120.61.

Gaffeys also request that this Honorable Court allow it to file an application for attorneys

fees incurred in this action for Acadia's breach of contract.  Massachusetts has carved an

exception to the "American Rule."  See *Wladman v. American Honda Motor Co.*, 413 Mass. 320,

321, 597 N.E.2d 404 (1992). Massachusetts Court s have allowed the award of attorneys fees

when an insurance company denies coverage for a loss even when there is no bad faith on the

part of the insurer. See *Wilkinson v. Citation Insurance Company, Inc.,* 18 Mass.L.Rep. 700,

2005 Mass.Super.LEXIS 21 (2005). The policy for allowing such an exception is that the

promise to indemnify is the consideration received by the insured for payment of the policy

premiums. Id. citing *Rubenstein v. Royal Ins. Co.,* 429 Mass. 355, 359, 708 N.E.2d 639 (1999).

"To impose upon the insured the cost of compelling his insurer to honor its contractual

obligation is effectively to deny him the benefit of the bargain." Id. at 360. The test as stated in

*Rubenstein,* 429 Mass. at 360 is:

> "The entitlement of an insured to attorneys fees and costs incurred in establishing
> contested coverage depends exclusively on whether that coverage is ultimately
> determined to exists ... The only consideration relevant to our inquiry are that the
> [plaintiffs] paid premiums to, and purchased comprehensive general liability insurance
> from, the defendant..."

Clearly, the Gaffeys paid the premium long after the theft. Since the Gaffeys are entitled to

coverage, they should be allowed to receive attorneys fees and costs of this action as well.

CONCLUSION

In conclusion, Plaintiffs, Brian and Kevin Gaffey respectfully requests that the this

Honorable Court order the following:

1.    Grant summary judgment in favor of the Plaintiffs as to Count I of their

        Complaint, finding that the loss of their vessel is covered under the policy;

2.    that the Plaintiffs should recover the agreed value as stated in the policy of

        $37,000.00 plus the attorneys fees ($9,148.17) expended in mitigating their

        damages less the recovered monies ($12,000.00) plus appropriate interest;

3.      That the Gaffeys should be awarded attorneys fees and costs of this action and

         that they should make application for said fees and costs; and

4.      Grant any other relief the Court deems appropriate.

                                                    Respectfully submitted,
                                                    Plaintiffs Brian and Kevin Gaffey
                                                    By his attorney

                                                    /s/ David S. Smith
                                                    _____

                                                    David S. Smith, Esq.
                                                    BBO No.: 634865
                                                    Cianciulli & Ouellette
                                                    163 Cabot Street
                                                    Beverly, MA 01915
                                                    Tel: (978) 922-9933
                                                    Fax: (978) 922-6142

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 26th day of January, 2006.

                                        /s/ David S. Smith
                                        _____

                                        David S. Smith