


October 13, 2004

David S. Smith, Esq.
Cianciulli & Ouellette
163 Cabot Street
Beverly, MA 01915

RE:   Our Claim         5131633
      Our Insured       Brian and Kevin Gaffey
      Date of Incident  9/3/03
      Your Client       Brian and Kevin Gaffey

Dear Attorney Smith:

We are in receipt of your demand letter of September 15, 2004 under Massachusetts General Laws Chapter 93A and have reviewed the file in its entirety.

After a careful review and legal opinion on the question of coverage, we must stand on our denial for coverage. As you know, in August 2003, Brian and Kevin Gaffey entered into a purchase and sales agreement for the sale of the subject vessel for the sum of $27,000 to Pamela Jordan. Mr. Dale Freidman acted as the broker for the Gaffeys and Mr. Paul Larson acted as the broker for Ms. Jordan.

Per the P&S, a pre-condition to the purchase of the vessel required a survey. The Gaffey's authorized Mr. Friedman to move the vessel from its berth at Riverfront Marina in Newbury, MA to Sea Dog Yacht Sales in Salisbury. Upon successful completion of the survey, Ms. Jordan wired-transferred the balance of the purchase amount ($25,350) to Mr. Friedman and made arrangements to have the vessel moved to Rhode Island.

When the Gaffey's did not hear from Mr. Friedman by August 29, 2003, they traveled to Sea Dog Yacht Sales to find their vessel gone and Mr. Friedman no where to be found. The Gaffeys learned that day that Ms. Jordan had, in fact, paid for the vessel in full and had moved it to Rhode Island.

The Gaffey's submitted a claim to Acadia Insurance Company alleging the vessel was "stolen" by Dale Friedman. The terms of the P&S were evidently met when Ms. Jordan paid the full purchase price to Mr. Friedman. There is little question that Mr. Friedman was acting as the Gaffey's agent and had expressed authority to try and sell the vessel. Nor is there a question that the Gaffey's entered into an enforceable purchase and sales agreement with Ms. Jordan. It is also known that the Gaffey's gave permission to Mr. Freidman to move the vessel for the purpose of the survey as a condition required in the P&S.

We believe that Mr. Freidman had apparent or implied authority to sell the vessel to Ms. Jordan and to collect the sales proceeds on behalf of the Gaffeys. See Pampegian v. Richmond, 319 Mass. 216, 65 N.E.2d 316 (1946), quoting Restatement of Agency ss 71 ("unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it.") Therefore, there does not appear to be a theft of the vessel, but rather a theft of the proceeds from the sale.

Further, a police report filed with the Salisbury Police Department sated that although the seller had paid the purchase price to Mr. Freidman, they had not received it and they had not authorized the vessel to be moved to Rhode Island. The entry in the report for "Offense" is "Fraud/Boat Sale". There is no indication that the Gafeys did not know where the vessel was located, nor was there ever any attempt to go to Rhode Island to retrieve it.

In response to the claim against Acadia Insurance Company pursuant to ALM FL chs. 93A and 176D for the manner in which we responded to the Gaffey's claim, we will address Section 3(9) of Chapter 176D a-d, f-g, n individually.

(a) We do not agree that Acadia or its representative, Isaac Howe, misrepresented pertinent facts or insurance policy provisions relating to coverage. You site exclusionary language which states, "The policy excludes however, "Theft or the unexplained disappearance of insured property from the yacht; unless there are visible marks of forcible entry or removal, or the entire yacht is stolen." This language, however, refers to personal property rather than the insured vessel. The claim here is for the vessel thus this more limited language does not apply.

(b) Acadia received the Gaffey's claim on September 23, 2003. The next day, claim representative Isaac Howe forwarded a proof of loss to the Gaffeys and requested that they return it with any supporting documentation. The "proof" and documentation were received on October 2, 2003 from the insured. Also on September 23, 2003, Mr. Howe took a recorded interview from Brian Gaffey. Once in receipt of the proof and documentation which included the purchase and sale signed by Kevin Gaffey, Mr. Howe determined there was no coverage and a letter of denial was issued on October 6, 2003. We do not feel that 13 days constitutes violation of subsection (b).

(c&d) Mr. Isaac Howe followed standard procedures at Acadia by reviewing the claim against the covering clause, reviewing the documentary evidence provided by the insureds and investigated the loss by interviewing Brian Gaffey. Once the investigation was completed, Mr. Howe determined that there had not been a theft of the vessel. There had, in fact, been a theft of the proceeds of the sale (money), which was not covered by the policy. The conclusion of his investigation and coverage analysis was clearly set forth in the denial letter on October 6, 2003.

(f,g,n) In this case, Mr. Howe clearly set forth in his denial letter that the basis of the loss was the theft of money, not the vessel and that the Acadia policy did not provide coverage for theft of money. By doing so, Acadia has satisfied the requirement of sections (f), (g), & (n).

For the reasons set forth above, we do not feel that we violated ALM GL chs. 93A and 176D when we denied the Gaffeys' claim for the theft of their vessel.

Sincerely,

*[signature]*

Barbara L. Taylor
Director - Claims

Service: **Get by LEXSEE®**
Citation: **319 Mass. 216**

*319 Mass. 216, \*; 65 N.E.2d 316, \*\*;*
*1946 Mass. LEXIS 578, \*\*\*; 163 A.L.R. 1206*

Areknaz Pampegian, executrix, v. George Richmond & others

[NO NUMBER IN ORIGINAL]

Supreme Judicial Court of Massachusetts

319 Mass. 216; 65 N.E.2d 316; 1946 Mass. LEXIS 578; 163 A.L.R. 1206

November 5, 1945, Argued
February 28, 1946, Decided



EXHIBIT
Taylor
3
12/19/05

**PRIOR HISTORY:** [\*\*\*1]

Suffolk.

Contract. Writ in the Superior Court dated October 16, 1944.

The case was tried before *Burns*, J.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, the executrix of the decedent's estate, appealed the ruling of the Superior Court, Suffolk County (Massachusetts), which denied her motion for a directed verdict and granted that of defendant attorneys in the executrix's action to recover funds collected by the attorneys for the decedent, but never accounted for.

**OVERVIEW:** The executrix contended that the trial court erred in holding that the defense of payment had been established as a matter of law because the attorneys allegedly turned over the disputed amount to a third-party, who they assumed was the decedent's agent. The court overruled the superior court and held that the superior court judge erred in directing a verdict in favor of the attorneys. In so holding, the court found that: (1) because there was no contention that the sum in dispute was paid to the decedent personally, the burden was on the attorneys to show that the third-party, to whom the payment was made, was authorized to receive payments on behalf of the decedent; (2) the attorneys failed to establish the third-party's authority to receive the payment as a matter of law; (3) the trial court did not err in refusing to enter a directed verdict in favor of the executrix, as it could not be said that there was no evidence to warrant a finding that the third-party had the apparent authority to receive the payment in question.

**OUTCOME:** The court sustained the executrix's exceptions to the superior court's ruling, which entered a directed verdict in favor of the attorneys.

**CORE TERMS:** mortgage, collection, Law Inst, authorized to receive, receive payment, matter of law, declaration, directing, collected, chattel mortgage, time to time, collecting, progress

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Business & Corporate Entities > Agency > Authority to Act > Agent Authority

Business & Corporate Entities > Agency > Authority to Act > Business Transactions 

**HN1** As to whether an agent has authority to receive payments on behalf of his principal, the rule is that, unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it. An agent who has been given possession of securities or other evidences of debts payable to the principal is not thereby authorized to receive payment. More Like This Headnote | *Shepardize:* Restrict By Headnote

◆ Hide Headnotes / Syllabus

**HEADNOTES:** *Agency*, Scope of authority or employment. *Payment.*

**SYLLABUS:** Evidence merely that the payee of a promissory note "through his agent" delivered it, unindorsed, to an attorney at law "for the purpose of collecting the same"; that the attorney dealt only with the agent respecting his activities in seeking and effecting collection and made reports only to the agent; and that the payee at no time communicated with the attorney, warranted but did not require a finding that the agent had authority on behalf of the payee to receive payment from the attorney of sums collected.

**COUNSEL:** *F. G. Lichtenstein*, for the plaintiff, submitted a brief.

*H. C. Thompson*, for the defendants.

**JUDGES:** Field, C.J., Dolan, Ronan, & Spalding, JJ.

**OPINIONBY:** SPALDING

**OPINION:** [*216] [**316] This action of contract is brought by the plaintiff as executrix of the estate of Garabed Aselbegian. In her declaration she alleges, in substance, that the defendants, as attorneys for Aselbegian, collected $ 667.80 for him for which they have never accounted. The plaintiff seeks to recover [***2] this sum with interest at thirty per cent from the date of demand under G.L. (Ter. Ed.) c. 221, § 51. The defendants pleaded a general denial, payment and the statute of limitations. The case was tried to a jury. At the close of the evidence the judge ordered a verdict for the defendants subject to the plaintiff's exception. At the same time, also subject to the plaintiff's exception, the judge denied the plaintiff's motion for a directed verdict. The questions for decision are the correctness of these rulings.

The following is a summary of the relevant evidence: The defendants are partners engaged in the practice of law [*217] in Boston. In 1935 Aselbegian, through his agent Morlian, delivered a note to the defendants "for the purpose of collecting the same." The note (which was dated March 16, 1932, and was due in or within one year from date, with interest) was in the sum of $ 1,000, but at the time it was turned over for collection the balance due, according to the plaintiff's declaration, was $ 600 with interest; Aselbegian was the payee and the makers were two individuals and a corporation. It is agreed that the note was not [**317] indorsed. In January, 1936, [***3] the defendants brought an action in the name of Aselbegian against the corporate maker to recover the balance due on the note. Thereafter in February, 1936, the defendants effected a settlement of the case with the corporation by which the defendants received its note in the sum of $ 667.80 secured by a chattel mortgage. The note was "payable to the defendant Samuel Rosen, Trustee," and he was similarly described as mortgagee in the mortgage. Thereafter "judgment for neither party" was entered in the action at law. In October, 1936, the defendants foreclosed the

mortgage and sold the mortgaged property to one Tufank, who was the highest bidder at the foreclosure sale, for $ 600. Of this sum $ 100 was paid in cash at the time of the sale, and Tufank's note for $ 500 (bearing interest at six per cent and secured by a chattel mortgage of the property sold) was received for the balance. Both the note and the mortgage ran to the defendant Rosen as trustee. The mortgage contained a provision that, upon payment of the note, "this Deed, as also the aforesaid note and all prior notes of Guzelian Bros. Inc. held by me or Garabed Aselbegian shall be void." In June of 1937 Rosen discharged [***4] the mortgage and surrendered the note to Tufank upon receiving from him the balance of $ 500 without interest. The defendants put in evidence two checks, one for $ 294.80 and one for $ 10, drawn by them and payable to Morlian. There was typed on each check the following: "Paid in full Re Aselbegian v. Guzelian Bros." The checks were deposited by Morlian in a bank in Los Angeles, California, and were paid through the Federal Reserve Bank in Boston. The balance of the $ 600 collected was retained by the defendants [*218] as compensation for their services. The defendants never dealt directly with Aselbegian with respect to the foregoing matters; all negotiations were with Morlian. The defendants "reported the progress of the case from time to time to . . . Morlian." Morlian had come into the defendants' office frequently in connection with collections that he brought in on behalf of other persons, and "seemed to be spokesman for the Armenian people in Watertown."

In directing a verdict for the defendants the judge ruled that the defence of payment had been established as matter of law. This was error. Inasmuch as there was no contention that the payment was made to Aselbegian [***5] personally, the burden of proof was upon the defendants to show that Morlian, to whom the payment was made, was authorized to receive it. *Whitaker v. Ballard,* 178 Mass. 584. *Boice-Perrine Co. v. Kelley,* 243 Mass. 327, 329, 137 N.E. 731. *Springfield National Bank v. Jeffers,* 266 Mass. 248, 252-253, 165 N.E. 474. The evidence as to Morlian's authority is meager. All that the record discloses is that Aselbegian, "through his agent [Morlian], delivered the note to the defendants for the purpose of collecting the same" and that the defendants thereafter reported the progress of the case to Morlian from time to time. There is no evidence of prior dealings with Morlian concerning the affairs of Aselbegian. It cannot be said on this evidence that Morlian's authority to receive the payments was established as matter of law. Am. Law. Inst. Restatement: Agency, § 71. Mechem, Agency, § 935. *Springfield National Bank v. Jeffers,* 266 Mass. 248, 252-253, 165 N.E. 474.

A more difficult question is whether the evidence would permit a finding that he possessed such authority. If it would, then the plaintiff's exception to the judge's refusal to direct a [***6] verdict in her favor must be overruled. HN1 As to whether an agent has authority to receive payments on behalf of his principal, the rule is that, "unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it." [*219] Am. Law Inst. Restatement: Agency, § 71. In comment a under that section it is stated that "an agent who has been given possession of securities or other evidences of debts payable to the principal is not thereby authorized to receive payment." See also Mechem, Agency, § 935; *Hunt v. Poole,* 139 Mass. 224, 30 N.E. 90; *Doubleday v. Kress,* 50 N.Y. 410. But in the case at bar we have more than the mere possession of an unindorsed note payable to the principal. There is the added circumstance that the agent had authority to turn the note over to the defendants for the purpose of collection plus the fact that Aselbegian never communicated at any time with the defendants and appeared to be content to entrust the details with respect to the collection of the note to Morlian. [***7] In *Kinsman v. Kershaw,* 119 Mass. 140, [**318] it was held that placing a bill (made out on the employer's bill-head) in the hands of an employee who had worked on the job for which the bill was rendered was sufficient evidence of the employee's authority to receive payment of it to require the submission of the case to the jury. Although the question is close, we cannot say that there was no evidence to warrant a finding that Morlian had the apparent authority to receive the payments in question. Am. Law Inst. Restatement: Agency, § 71. *Kinsman v. Kershaw,* 119 Mass. 140. See *Shed v. Brett,* 1 Pick. 401; *James v.*

*Lewis*, 189 Mass. 134, 75 N.E. 217; *R. T. Adams Co. v. Israel*, 244 Mass. 139; *Springfield National Bank v. Jeffers*, 266 Mass. 248, 252, 253, 165 N.E. 474.

Since the judge erred in directing a verdict for the defendants the exceptions must be sustained.

*So ordered.*

Service: **Get by LEXSEE®**
Citation: **319 Mass. 216**
View: Full
Date/Time: Friday, December 16, 2005 - 4:18 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▥ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.


About LexisNexis | Terms & Conditions
Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.