UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-CV-12354-RGS

| | |
|---|---|
| BRIAN AND KEVIN GAFFEY | ) |
| | ) |
| Plaintiffs | ) |
| v. | ) |
| | ) |
| ACADIA INSURANCE | ) |
| COMPANY | ) |
| | ) |
| Defendant | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, Acadia Insurance Company ("Acadia"), by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and pursuant to Rule 56, F R. Civ. P., and Rule 7.1(B), Local Rules of the United States District Court for the District of Massachusetts, submits the following Memorandum of Law in support of its Cross-Motion for Summary Judgment.

INTRODUCTION

This is a coverage dispute arising from the sale of an insured motor yacht. The undisputed evidence shows that the insureds' broker absconded with the sale proceeds. The insureds nonetheless assert that the sold vessel was somehow stolen, in order to bring their misfortune within the scope of insurance coverage. They have filed a two-count complaint against Acadia: Count I is a claim for breach of contract; and Count II is a Chapter 93A claim, predicated solely on Acadia's "refusal to provide insurance coverage to the Plaintiffs for the loss."

1

Because Plaintiffs' loss did not involve "sudden and accidental, direct, physical loss of or damage to the insured property," but instead arose from the left of money, which is not a peril insured against under Acadia's policy, Acadia is entitled to summary judgment on both counts of the complaint.

## FACTS

The pertinent facts are as set forth in the Statement of Material Facts contained in Acadia's accompanying Cross-Motion for Summary Judgment.

## ARGUMENT

### Plaintiffs Cannot Show that the Theft of the Proceeds from the Sale of Their Vessel Was a Covered Loss.

Plaintiffs have the burden of proving that their loss falls within the scope of insurance coverage provided under the policy. *See, e.g.*, *Antilles Steamship Co., Ltd. v. Members of American Hull Insurance Syndicate,* 733 F. 2d 195, 199 (2d Cir. 1984); *S. Felicione & Sons Fish Co. v. Citizens Casualty Co.*, 430 F. 2d 136, 138 (5th Cir. 1970) ("It is too well settled to require citation that the burden of proving a loss by a peril insured against is on the insured."); *Jibbar v. Calvert Fire Insurance Co.*, 623 F. 2d 41, 44 (8th Cir. 1980); *Allied Marine*, 151 F. Supp. 2d at 122; *See generally* 2 Schoenbaum, *Admiralty and Maritime Law* §19-17 at 347 (4th ed. 2004) ("The burden of proving the loss was caused by a peril insured against is on the assured."). This means that Plaintiffs must initially come forward with proof of a "sudden and accidental, direct, physical loss of or damage to the insured property due to an external cause."

Rather than seeking to show that their claim falls within the general scope of coverage (*i.e.*, "sudden and accidental, direct, physical loss of or damage to" the vessel),

Plaintiffs try to fit their loss within an exception to an exclusion. The policy specifically excludes theft of property from the yacht, unless "the entire yacht is stolen." However, the undisputed evidence demonstrates there was neither a theft *of the vessel* nor, indeed, loss of or damage to the vessel.

The Plaintiffs authorized Friedman to sell their vessel to Pamela Jordan for $27,000.00. They further authorized the relocation of the vessel to Friedman's place of business and committed the Aquasport to Friedman's custody. They allowed Friedman to operate the vessel. However, he did not abscond with the vessel. Rather, Pamela Jordan took the vessel after paying for it. Plaintiffs concede that Ms. Jordan did not steal the vessel. *See* DSMF ¶26. They fail to explain how Friedman could have stolen it.

Plaintiffs argue that the boat could not have been transferred without a certificate of title; but this is a red herring. Once Ms. Jordan paid the full purchase price to Plaintiffs' authorized agent, satisfying her end of the bargain, she was entitled pursuant to the signed purchase and sale agreement to possession of the vessel, as well as good title. Plaintiffs surely must concede that if they had received the purchase money, they could not have claimed the boat was stolen merely because they had not yet turned over the title. Rather, they would have had the affirmative obligation to furnish a good certificate of title as soon as possible. *See* 323 CMR 1.04. By the same token, Friedman had no right to prevent Ms. Jordan from taking the vessel once she paid for it. The aspect of Friedman's conduct that was, shall we say, irregular was not in letting her take the boat but rather in misappropriating the sale proceeds.

Moreover, if Plaintiffs are correct and Ms. Jordan did not acquire a right of possession of the vessel upon payment, then Plaintiffs had the ability to retrieve the boat

at any time. They could not claim that the boat was lost, nor had it been damaged. Conversely, Plaintiffs are wrong and Ms. Jordan did have the right of possession, then the boat was neither lost nor stolen. The fact that instead of litigating this issue with Ms. Jordan, Plaintiffs chose to compromise and ultimately settled for receipt of less than what they had originally bargained for does not mean that the vessel was either lost or stolen. Furthermore, the fact that Plaintiffs transferred title to Ms. Jordan and executed a bill of sale, selling the vessel to her for the stated sum of $27,000.00, utterly confutes their assertion that they lost their vessel through theft. Their conduct also voids coverage. *See* DSMF ¶5.

Acadia's position is well supported. It should be noted initially that federal maritime law applies to coverage disputes involving yacht policies. *See, e.g.*, *New England Mutual Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 30-35, 20 L. Ed.90 (1871); *Acadia Insurance Co. v. McNeil*, 116 F.3d 599, 601(1st Cir. 1997). On the other hand, in the absence of an entrenched federal doctrine, federal law is to be supplemented by state law. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S. Ct. 368, 99 L. Ed. 337(1955).

For insurance purposes, Massachusetts courts have defined theft as "the taking and carrying away of the personal property of another with the intent unlawfully to deprive that other permanently of the use of it." *Swift v. American Universal Insurance Co.*, 349 Mass. 637, 641, 212 N.E.2d 448 (1965); *Rich v. United Mutual Fire Insurance Co.*, 328 Mass. 133, 134, 102 N.E.2d 431 (1951). No one disputes that Friedman committed theft; but the sole item he personally "took and carried away" was the money

4

from the sale.  Only Pamela Jordan took and carried away the Aquasport, but Plaintiffs concede that she did not do so with any unlawful intent.

Moreover, the law of agency makes it clear that there was no theft of the vessel. The existence of agency can be implied from "a course of conduct showing that a principal has repeatedly acquiesced therein and adopted acts of the same kind." *LaBonte v. White Construction Co.*, 363 Mass. 41, 45, 292 N.E.2d 352 (1973); *Hurley v. Ornsteen*, 311 Mass. 477, 481, 42 N.E.2d 273 (1942); *See Restatement (Second) of Agency* §7, comment c and §43 (1958).  Apparent authority is that which discloses "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Neilson v. Malcolm Kenneth Co.*, 303 Mass. 437, 441, 22 N.E.2d 20 (1939); *Weisman v. Saetz*, 11 Mass. App. Ct. 440, 442, 416 N.E.2d 1007 (1981).

Under these tests, Friedman had either actual or apparent authority to consummate the sale according to its terms by accepting payment of the purchase price and releasing the vessel to the buyer.  "It may be inferred from business customs that the other party to a contract has agreed with the agent to pay the purchase price to the agent and not to the principal in person or to any other agent of the principal." *New England Tel. Co. v. Kazarian*, 1999 Mass. App. Div. 296, 297 (1999), quoting *Restatement (Second) of Agency* §364.  Even more significantly, it has been observed: "As to whether an agent has authority to receive payments on behalf of his principal, the rule is that, 'unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually

5

accompanies it, or is a reasonably necessary means for accomplishing it.'" *Pampegian v. Richmond*, 319 Mass. 216, 218, 65 N.E. 2d 316, 317 (1946) quoting *Restatement (Second) of Agency* §71.

Since the broker had actual or apparent authority to accept payment of the purchase price, then payments to the broker must be deemed payment to Plaintiffs. This principle is illustrated in a case where a dishonest insurance broker purloined two-thirds of a three-year prepaid premium. *See Hobbs Brook Agency, Inc. v. North River Insurance Co.*, 7 Mass. App. Ct. 885, 386 N.E.2d 1315, 1316 (1979). Because the broker was acting as the agent of the insurance company when he received the premium, the insurance company had to bear the loss. *Id.* at 885, 286 N.E.2d at 1316. Likewise, it has been held that an insurer's obligation was discharged when it issued its check to the insured's agent. *Aetna Casualty & Surety Co. v. Fennessey*, 37 Mass. App. Ct. 668, 674, 642 N.E.2d 1050 (1994).

The cases cited by Plaintiffs do not support their position. None of them stands for the counterfactual proposition that the theft of the proceeds from an authorized sale may be deemed a theft of the item sold. *Bloom v. Ohio Farmers' Insurance Co.*, 255 Mass. 528, 152 N.E. 345 (1926) involved garden-variety car theft. Similarly, in *Farnum v. Bankers' & Shippers' Insurance Co.*, 281 Mass. 364, 368, 183 N.E. 718, 720 (1933), the court held that if a third party had driven away with the plaintiff's car without permission, intending to keep it, there was theft. In *Rich, supra*, a directed verdict for the insurer was sustained, because, although the plaintiff's car was moved, there was no evidence that it was intentionally moved with the intention of permanently depriving the Plaintiff of its use. *Rich*, 328 Mass. at 432. In *Feinberg v. Insurance Co. of North*

6

*America*, 260 F.2d 523, 526 (1st Cir. 1958), where a yacht was scuttled but retrieval was inevitable, the court noted that "under Massachusetts law there was strictly speaking no theft of the entire yacht…." *Id*. at 527.  *Schiappa v. National Marine Underwriters*, *Inc*., 53 Mass. App. Ct. 161, 775 N.E.2d 791 (2000) involved theft by stripping a vessel of its parts.  Finally, in *Imperial Insurance Co. v. Ellington*, 491 S.W.2d 368 (Tex. Civ. App. 1973), a thief stole the plaintiff's boat by pretending to pay him for it with a worthless check and worthless promissory note.

In contrast to all these cases, Dale Friedman, the putative thief, did not make away with any vessel, components, or vehicle of Plaintiffs; he simply stole money.  The entire goal and result of his scheme was to acquire, not the Aquasport, but, rather, funds that did not belong to him.  The vessel was simply the means for obtaining that end.  If he had stolen the sale proceeds and, for some reason, Ms. Jordan had refrained from taking the Aquasport, Plaintiffs still would have found themselves in the same boat, so to speak: The sale proceeds would still be gone, and they would still have had the same dispute with Ms. Jordan over who had the better claim to the vessel.

In short, the undisputed evidence shows that Plaintiffs' boat was not stolen or otherwise lost.  Rather, the boat was sold, and the sale proceeds stolen.  Even if Plaintiffs had not authorized the sale, that would not make the boat stolen.  At worst, the buyer labored under a misunderstanding when she took the vessel and retained it until the parties had reached a new and final agreement on the vessel's sale.  Plaintiffs acknowledged that they still maintained control over the vessel by executing a bill of sale and accepting funds in March, 2003.  A vessel can hardly be stolen if the owner can issue a bill of sale and receive the proceeds for such sale. Plaintiffs undoubtedly sustained a

7

loss; but it was not a loss for which they had procured insurance coverage.  Acadia never agreed to insure Plaintiffs for loss of the proceeds of the sale of their vessel.  To rule that peculation of such sale proceeds amounts to the theft of "the entire yacht" would be to rewrite the parties' insurance contract under the guise of interpretation.  *Cf. C.K. Smith & Co. v. Motiva Enterprises LLC*, 269 F.3d 70, 77 (1st Cir. 2001).

Plaintiffs herein seek what is, in essence, recovery for a total loss.  The Acadia policy, however, requires that "with respect to total or constructive total loss", the insured will "transfer title of that property to [Acadia] . . .".  Plaintiffs have already transferred title of the vessel to Ms. Jordan.  They cannot, therefore, provide title to Acadia, a condition precedent to a recovery for a total loss.  Thus, Plaintiffs cannot prevail on their coverage claim.

Because Plaintiffs cannot show a breach of contract under Count I of their Complaint, it cannot be said that Acadia's "refusal to provide insurance coverage to the Plaintiffs for the loss" was "an unfair and deceptive trade practice" in violation of any provision of Chapter 93A of the General Laws (*See* Complaint, ¶¶ 34-35).  Hence, Plaintiffs cannot prevail on Count II of their Complaint.

CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Acadia on all claims.

Dated at Portland, Maine this 10th day of February, 2006.

                ACADIA INSURANCE COMPANY

                By its Counsel:

                /s/Leonard W. Langer

                /s/Marshall J. Tinkle
                BBO# 565513

TOMPKINS, CLOUGH, HIRSHON & LANGER, P.A.
Three Canal Plaza
P. O. Box 15060
Portland, ME  04112-5060
(207) 874-6700
lwlanger@tchl.com

**CERTIFICATE OF SERVICE**

I, Leonard W. Langer, hereby certify that on February 10, 2006, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send a notification of such filing(s) to the following:  David S. Smith Esq., Cianciulli & Ouellette, 163 Cabot St., Beverly, 01915, counsel for Plaintiff.

                /s/  Leonard W. Langer

Acadia/Gaffey
Memorandum of Law
Cross Mot Sum J