UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN GAFFEY and KEVIN GAFFEY, )<br>)<br>   Plaintiffs, )<br>)<br>v. )<br>)<br>ACADIA INSURANCE COMPANY, )<br>)<br>   Defendant. ) | CIVIL ACTION<br>NO.: 04-CV-12354-RGS |

**PLAINTIFFS' MEMORANDUM IN REPLY AND OPPOSITION TO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AS WELL AS IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT AS TO COUNT II**

NOW COME the Plaintiffs, Brian Gaffey and Kevin Gaffey, by and through their counsel, to submit this memorandum in reply to Defendant's opposition to Plaintiffs' motion for partial summary judgment and opposition to Defendant's cross-motion for summary judgment as well as in support of Plaintiffs' cross motion for summary judgment as to Count II.

## INTRODUCTION

This is a coverage dispute arising from the theft of the Gaffeys' vessel. Acadia agrees that Friedman was a thief. The issue for the Court to decide is simply whether the Gaffeys are covered for the direct physical loss sustained to their vessel as a result of Dale Freedman's actions. Acadia cannot dispute that the Gaffeys maintained title at all time to the vessel and did not authorize Dale Friedman to give the vessel to Pamela Jordan. Dale Friedman's actions as to the Gaffeys vessel amounted to a sudden ... direct, physical loss of the insured property as a result of an external cause. The Plaintiffs did not move for summary judgment as to Count II of their complaint initially as it appeared to be a factual dispute as to whether liability would attach under Count II. However, Acadia's opposition to Plaintiffs partial motion for summary

judgment and Acadia's cross motion further illustrates that Acadia has violated M.G.L. c. 93A and c. 176D that perhaps makes it ripe for Plaintiffs move for summary judgment on that Count as well.

## FACTS

Acadia challenges paragraphs 11, 14, 21 and 29 of the Plaintiffs' Statement of Material Facts. Acadia relies upon conclusory allegations, improbable inferences, and unsupported speculation in challenging these paragraphs. For example, paragraph 11 of the Plaintiffs' Statement of facts states:

> They made inquiry of the vessel and reached an oral agreement with Dale Friedman the President of Sea Dog Yacht Sales whereby if the Mako had a satisfactory boat survey, the Plaintiffs would pay Sea Dog Yacht Sales $39,000.00 for the vessel as long as Sea Dog Yacht Sales was able to sell their 1999 Aquasport so that they would net $24,000.00. See Exhibit B at tp. 17-20; Exhibit C at tp. 24-29.

Acadia relies upon paragraph 7, 10, 11 and 33 as well as page 65 of Kevin Gaffey's deposition to challenge this statement. The facts as stated by the Gaffeys contained in Paragraph 11 are supported by the specific citations. Acadia has chosen to twist or ignore the Gaffeys' testimony as to the facts contained in this paragraph and make unsupported allegations or improbable inferences that the facts contained therein are inaccurate without having any direct or inferential evidence that contradicts paragraph 11. Acadia's paragraph 7 citations ignore the entire context of the Gaffey's deposition without any additional evidence in order to challenge paragraph 11. The same can be said for Plaintiffs' paragraph 14 and 21. With respect to Plaintiffs' paragraph 29, perhaps the citations given by Plaintiffs for that fact do not specifically use the term "closing", however, the purchase and sale agreement marked as Exhibit 5 to Kevin Gaffey's deposition filed by the Defendant specifically states that a closing was to take place at Sea Dog Yacht Sales on August 15, 2003. Again, Acadia has only challenged these paragraphs through

conclusory allegations, improbable inferences, and unsupported speculation, as such, the Plaintiffs' paragraphs must be deemed to be admitted by Acadia, as it failed to provide countering factual evidence.

Contrary to Acadia's position, the Gaffeys did not know the exact location of their vessel while it was in Pamela Jordan's custody. See Plaintiffs' Exhibit D at Bate Stamp 57, 76-77.

With respect to Acadia's violations of M.G.L. c. 93A and 176D, the Plaintiffs refer the Court to their Statement of Facts (PSF) and Plaintiff's Statement of Confidential Facts (PSCF) previously filed in Support of their Motion for Partial Summary Judgment.

ARGUMENT

A.   STANDARD

Plaintiffs refer the Court to their Motion for Partial Summary Judgment for the legal standard for summary judgment, but restates that "the standards are the same where . . . both parties have moved for summary judgment." *Bienkowski v. Northeastern Univ.,* 285 F.3d 138, 140 (1st Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure 2720, at 335-36 (3d ed. 1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the rule 56 standard.).

B.   GAFFEYS HAVE PROVEN THAT COVERAGE IS AVAILABLE FOR THEIR LOSS

   1.   *The theft of the Gaffeys' vessel was a covered loss.*

Acadia does not dispute that Dale Friedman committed a theft. See Acadia's brief at 9. As pointed out in the Plaintiffs' motion, in order for their to be coverage, there had to be a direct physical loss of the vessel was due to an external cause, which in this case is Dale Friedman's theft of the entire vessel. Plaintiffs' Memo at 4. PSF¶1-30. The terms "theft" and "stolen" are not

3

defined in the policy and must be given their plain and usual meaning2. PSF¶9. Acadia is choosing to ignore one fundamental fact that Massachusetts is a title state and that a transfer of a state registered vessel cannot take place until title is transferred. See 323 CMR 1.03-1.07. Title was never transferred until well after Acadia denied coverage and the Plaintiffs were forced to mitigate their damages. PSF ¶33-48. Moreover, Acadia ignores that the Gaffeys have always maintained that Dale Friedman did not have their authority to move the vessel from Sea Dog Yacht Sales until they had a bank check or certified funds and assurance that Kevin Gaffey's loan with Eastern Bank had been satisfied. PSF ¶21-29. Gaffeys would not have signed title to this vessel without these assurances. Id.

Acadia's policy clearly has certain exceptions to coverage. However, the policy in question does not contain language so as to exclude from coverage a loss occurring by reason of a fraudulent scheme, trick, device of false pretense or theft by an authorized user. Had such language been inserted in the policy, the exclusion would be sustained. See e.g. *Schiappa v. National marine Underwriters, Inc.,* 56 Mass.App.Ct. 161, 775 N.E.2d 791 (2000)(The exclusionary clause contemplates tortious abstraction of the boat proper, as where a bailee might secrete the entire boat, or embezzle or convert it); *Freedman v. Queen Insurance Company of America¸* 56 Cal. 2d 454, 364 P.2d 245 (1961); *Kozak v. USF&G*, 120 Wis. 2d 462, 355 N.W.2d 362 (1984)(theft of bailee covered). In essence, Acadia is trying to create an exclusion that is not present in the policy by stating that the Gaffeys are not covered for theft by their agent.

2.      *Acadia's agency theory is misplaced in that Dale Friedman's actions as to the Gaffeys is a theft or physical loss of the vessel due to an external cause that is covered under the policy.*

Acadia spends a considerable amount of time discussing agency law. Contrary to Acadia's suggestion there is no repeated course of dealings between Gaffeys and Friedman

4

wherein Gaffeys have adopted some conduct of Friedman.  Acadia's Brief at 9.  Also, there is no evidence of business customs for this type of transaction.  Acadia's Brief at 10.  Acadia cites to numerous cases all of which are not on point as to what the Gaffeys have established, that is Friedman was the external cause that resulted in the loss or theft of their vessel.

Acadia cites to *Hobbs Brooks Agency, Inc. v. North River Insurance Co.*, 7 Mass.App.Ct. 885, 386 N.E.2d 1315, 1316 (1979).  That case involved an insurance agent who received premiums from the insured and failed to turn them over to the insurer.  The insurer was required to provide coverage to the insured even though the insurer's agent absconded with the premium.  However, this case does not address whether North River Insurance Company was insured for this type of loss.  Nor does it address what was taken from North River.  Same is true for *Aetna Casualty & surety Co. v. Fennessey*, 37 Mass.App.Ct. 668, 674, 642 N.E.2d 1050 (1994) relied upon by Acadia.  That case does not address whether the personal injury clients had insurance for the theft by their attorney.  Nor does the case address what was taken from those personal injury clients.

Using Acadia's agency posturing, the dispute at the case at bar is between the principal and the principal's insurance company as a result of the principal's agent acting willfully outside of the scope of the agent's authority resulting in the physical loss of the principal's vessel.  An analogy can be drawn from other cases concerning analogous fact patterns in cases admittedly involving slightly different types of insurance policies.

In Wisconsin, a farm hand made an unauthorized sale of cattle.  The farm hand was an agent that sold cattle to someone without authority and then absconded with the money.  The policy in question covered theft, meaning any act of stealing but excluded wrongful conversion and embezzlement.  The insurance company said the actions of the farm hand fell within the

5

wrongful conversion and embezzlement exclusion. The Court ruled the farm hands actions amounted to theft[1]. See *Kozak v. USF&G*, 120 Wis. 2d 462, 355 N.W.2d 362 (1984). Similar cases have had similar results concerning cars and jewelry where an agent steals an item entrusted to said agent. See e.g. *David R. Balogh, Inc. v. Pennsylvania Millers Mutual Fire Ins. Co.*, 307 F.2d 894 (1962); *Thomas Inv. Co. v. Thompson*, 32 S.W.2d 708 (1930). While the farm hand may have had the outward appearance of having the ability to sell cattle to a third party, he lacked actual authority to do so. The same is true here, Friedman may have had the outward appearance to Jordan that he had authority to sell the Gaffeys' vessel, however, he not only lacked actual authority to do so, he also lacked the possession of a signed title that is necessary to transfer good title. Acadia's reliance on the agency relationship is horribly misplaced when it comes to whether there is coverage for Friedman's theft of the Gaffeys' vessel.

    3.    *Acadia's new theories for denying coverage are not applicable.*

In Acadia's opposition, it appears to be asserting that the fact that the Gaffeys' later transferred title to Jordan that coverage is void by relying upon DSMF ¶4 and 5. Acadia's brief at 9 and 12. This was certainly not a position taken in any denial letter. See PSF ¶¶34 and 52. Acadia's argument is completely unfounded in that title did not transfer until well after Acadia had denied coverage for the loss. Acadia relinquished its rights on how the underlying issue was resolved when it denied coverage.

What is known is that the Gaffeys gave an incomplete bill of sale to be held in escrow pending the closing. PSF ¶23. After the vessel was stolen, Gaffeys filed a claim with Acadia. PSF ¶33. Acadia denied the claim. PSF ¶34. The Gaffeys had a duty to mitigate or minimize their damages. See *Degener v. Gray Line*, 331 Mass. 133, 117 N.E.2d 641 (1954); Restatement, 2d, Contracts §350, Comment b. Gaffeys were obligated to take all reasonable steps which do

---

[1] The Court first ruled that the terms "wrongful conversion and embezzlement" in a theft policy was ambiguous.

not entail undue risk, expense or inconvenience in order to mitigate their damages. See *Hall v. Paine*, 224 Mass. 62, 112 N.E. 153 (1916); *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 441 N.E.2d 1027 (1982). After that denial, Gaffeys mitigated their damages by reaching a settlement agreement with Jordan and her broker. PSF ¶44-48. The Gaffeys were not required to litigate coverage issues with Acadia before they mitigated their damages.

C.   ACADIA HAS VIOLATED M.G.L. C.93 §§ 2 AND 9 AS WELL AS C. 176D.

Massachusetts General Laws, c 93A is a legislative attempt to regulate business activities with view to providing proper disclosure of information and more equitable balance in relationship of consumer to persons conducting business activities. *Commonwealth v. DeCotis*, 366 Mass. 234, 316 N.E.2d 748 (1974); *Heller v. Silverbranch Const. Corp.*, 376 Mass. 621, 382 N.E.2d 1065 (1978); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 20 F.R. Serv.3d 409 (1st Cir. 1991). A valid claim for relief under Chapter 93A is stated by allegations that there is (1) a transaction involving purchase or lease of goods, services, or real or personal property, (2) undertaken primarily for personal, family, or household purposes, and (3) defendant used or employed unfair or deceptive act or practice, and (4) demand letter was sent 30 days prior to commencement of suit. See *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768 (1975). Clearly, the issue here involves a policy of insurance that was for Gaffeys' personal pleasure use. PSF¶5 at Exhibit E, "PLS" stands for "pleasure." They also sent a demand letter 30 days prior to arbitration. PSF¶51. So the issue here is simply whether Acadia used or employed unfair or deceptive practices in handling Gaffeys' claim.

Whether conduct is deceptive is initially a question of fact, to be answered on an objective basis and not by a subjective measure given by the defendants. See *Lowell Gas Co. v. Attorney Gen.,* 377 Mass 37, 51, 385 N.E.2d 240 (1979); *Commonwealth v. AmCan Enters, Inc.*,

7

47 Mass.App.Ct. 330, 335, 712 N.E.2d 1205 (1999). A successful Chapter 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, see *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 703, 322 N.E.2d 768 (1975), or that the defendant intended to deceive the plaintiff, see *Swanson v. Bankers Life Co.,* 389 Mass. 345, 349, 450 N.E.2d 577 (1983).

Act or practice may be "unfair" within meaning of Chapter 93A without being deceptive or fraudulent. *Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 532 N.E.2d 660 (1989); *Service Publications, Inc. v. Goverman*, 396 Mass 567, 487 N.E.2d 520 (1986). Unfairness is determined from all the circumstances. See *Duclersaint v. Fannie Mae*, 427 Mass. 809, 696 N.E.2d 536 (1998).

M.G.L. c.93A §9 incorporates within its prohibitions violation of insurer's unfair claim settlement statute. M.G.L. c. 176D §3(9). See *Jet Line Services, Inc. v. American Employers Ins. Co.*, 404 Mass. 706, 537 N.E.2d 107 (1989). Consumers may recover under section 9 for violation of clause 9 of Chapter 176D section 3(9) without regard to whether the violation is unlawful under Chapter 93A section 2. See *Polaroid Corp. v. Travelers Indem. Co.,* 414 Mass. 747, 610 N.E.2d 912 (1993).

Unfair claim settlement practice consists of any of the following acts or omissions:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

    (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

    (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

See M.G.L. c.176D(3)(9). This statute requires insurers to adopt and implement reasonable standards for the investigation of claims arising under policies and prohibits the denial of claims without conducting a reasonable investigation based on all available information. *Roche v. Zurich Insurance Co.*, 1989 AMC 1826 citing *Noyes v. Quincy Mutual Fire Insurance Co.*, 7 Mass.App.Div. 723 (1979). Clearly Acadia has acted unfairly within the meaning of Chapter 93A through out the handling of the claim and has violated Chapter 176D §§(3)(9) as follows:

    (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

Acadia continues to misrepresent pertinent facts concerning the loss of the Gaffeys vessel. Acadia has always maintained that this was not a theft of a vessel despite the fact that Acadia knew that title to the vessel lay in the hands of the Plaintiffs not Dale Friedman or Pamela Jordan. PSF¶¶34-43. Acadia was on notice that at the time it insured the Plaintiffs' vessel, there were regulations in effect that dictate how a Massachusetts state registered vessel owner transfers title. Acadia knew that Friedman had committed a theft. Acadia's Brief at 9. Acadia neglected to consider the title issue even though it was identified as being a different fact from the other claim that was brought by another Dale Friedman's victims. See PSF 61 and PSCF at 61-68. See also PSCF at 69-71 for further failures of Acadia to properly identify the significance of facts at issue in making coverage determinations. While completely disregarding Massachusetts and Rhode Island statutory and regulatory authority, Acadia misrepresented those facts in making coverage determination by concluding that the vessel was not stolen and that money was

stolen despite the insured's own testimony to the contrary and the existence of a purchase and sales agreement that clearly called for a closing to occur. See DSMF¶ 17.

> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

In addition to what is stated above, Acadia's claim file recognized that the Gaffeys held title to the vessel in question. PSF¶¶ 33-42. Acadia did nothing to inquire as to the significance of that title. PSF¶¶ 37 and 57. Acadia's file is completely void of that information. PSF 36 at Exhibit K. Acadia failed to conduct a reasonable and thorough investigation into what it takes to transfer title to the vessel even after conferring with counsel. See PSF¶¶ 52-57. Acadia has clearly violated this provision.

> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

As stated above, Acadia's file is missing any information concerning what investigation was conducted into the importance of the title to the vessel. Acadia selected to ignore the relationship between the Gaffeys and Friedman in determining whether there was a loss of their vessel. Friedman did not have any authority from the Gaffeys to release the vessel to Jordan. This is demonstrated by the purchase and sales agreement and the Gaffeys own testimony that there was to be a closing at which time title and money would be exchanged. See DSMF¶ 17; PSF¶ 21-29. The closing never took place and as such title never transferred to Jordan.

> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

Despite repeatedly being informed that Acadia's position is incorrect with respect to coverage for this loss, Acadia has never offered any monies to the Gaffeys. Instead, Acadia has forced the Gaffeys to incur significant legal fees and costs in order for them to recover what is owed to them under the terms of the policy. See also factual discussion held at PSCF at 69-71.

> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

Clearly, Acadia has compelled the Gaffeys to institute litigation to recover amounts due under an insurance policy. After the Court finds in favor of the Gaffeys that coverage was available for their loss, the Court must find under this section of c. 176D that Acadia did compel the Gaffeys to institute this litigation in order to recover amounts substantially more than was ever offered. See also factual discussion held at PSCF at 69-71.

> (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Acadia did not provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denying the Gaffey's claim. See PSF ¶¶34-43, 61; PSCF¶¶61-71. Acadia ignored the applicable law as to the transferability of state registered vessels. It also chose to ignore the facts and instead create or interpret the facts in a way that flies in the face of what actually happened. Acadia is trying to stand in Pamela Jordan's shoes to avoid coverage, abandoning its obligations to its insured.

Acadia's violations of M.G.L. c.176D §3(9) are violations of chapter 93A §2 and 9. Acadia's overall handling of the Gaffey claim can only be characterized as misleading and unfair. Acadia must be held accountable for its decision to ignore relevant evidence.

Clearly Gaffeys must also prove injury to recover under Chapter 93A. In this case it is clear that they were forced to file suit to recover monies owed under the policy. Causing a party to institute litigation to recover moneys ultimately owed to the injured party is sufficient injury to trigger the statutory damages allowed under Chapter 93A. See *DiMarzo v. American Mut. Ins. Co.*, 389 Mass. 85, 449 N.E.2d 1189 (1983). Their damages surrounding this part of their claim

are set forth above in the Plaintiffs' statement of facts in support of their motion for partial summary judgment. Once this Honorable Court finds in favor of the Gaffeys for Acadia's violation of Chapter 93A and 176D, the Gaffeys ask the Court to not only treble the damages but also allow them to make application for all of their attorney fees and costs associated with this matter.

D.  CONCLUSION

In conclusion, Plaintiffs, Brian and Kevin Gaffey respectfully request that this Honorable Court order the following:

1. Grant summary judgment in favor of the Plaintiffs as to Count I of their Complaint, finding that the loss of their vessel is covered under the policy;

2. that the Plaintiffs should recover the agreed value as stated in the policy of $37,000.00 plus the attorneys fees ($9,148.17) expended in mitigating their damages less the recovered monies ($12,000.00) plus appropriate interest;

3. That the Gaffeys should be awarded attorneys fees and costs of this action and that they should make application for said fees and costs;

4. Grant summary judgment in favor of the Plaintiffs as to Count II of their Complaint, finding that Acadia has violated M.G.L. c. 93A and c.176D;

5. Award treble damages and attorneys fees and costs;

6. Grant any other relief the Court deems appropriate.

        Respectfully submitted

        Brian and Kevin Gaffey
        By their attorney,

        /s/ David S. Smith

        _____
        David S. Smith, Esq., BBO# 634865
        Cianciulli & Ouellette
        163 Cabot Street
        Beverly, MA 01915
        (978) 922-9933

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 22nd day of February, 2006.

        /s/ David S. Smith
        _____
        David S. Smith