## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

                                                          CIVIL ACTION
                                                          NO. 04-CV-12354-RGS

| | |
|---|---|
| BRIAN AND KEVIN GAFFEY | ) |
| | ) |
|         Plaintiffs | ) |
| v. | ) |
| | ) |
| ACADIA INSURANCE | ) |
| COMPANY | ) |
| | ) |
|         Defendant | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' "CROSS MOTION" FOR SUMMARY JUDGMENT AS TO COUNT II, WITH INCORPORATED MEMORANDUM OF LAW**

NOW COMES Defendant, Acadia Insurance Company ("Acadia"), by and through its counsel, Tompkins, Clough, Hirshon & Langer, P.A., and pursuant to Rules 7.1(B)(2) and 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, opposes Plaintiffs' "Cross Motion" for Summary Judgment as to Count II.  Acadia notes that Plaintiffs have not submitted a separate statement of material facts in support of this "cross motion" but instead apparently rely on their previously filed Statement of Material Facts in support of their Motion for Partial Summary Judgment. Accordingly, there are no new factual assertions to which Acadia might respond, and therefore Acadia relies on the Statement of Material Facts set forth in its Opposition to Plaintiffs' Motion for Partial Summary Judgment.

In opposition to the "cross motion," Acadia states as follows:

ARGUMENT

A party should not be permitted to pursue summary judgment in a piecemeal fashion. *See, e.g., Allstate Finance Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004); 11 *Moore's Federal Practice* at 56-80.1 (3d ed. 2005). Plaintiffs initially filed their motion for summary judgment solely with respect to Count I of their complaint; and Acadia responded by, *inter alia,* filing a cross-motion for summary judgment. Plaintiffs call their new summary judgment motion a "cross motion," but there is no such thing as a cross-motion to a cross-motion. Plaintiffs' new motion is at best an afterthought.

Plaintiffs say that they did not initially move for summary judgment on their Chapter 93A claim because there "appeared to be a factual dispute as to whether liability would attach under Count II" (Plaintiffs' Memorandum at 1). This assertion is curious. Plaintiffs' Chapter 93A claim (as discussed below) rests entirely on the notion that coverage for Plaintiffs' loss was so clear that Acadia's denial of coverage was outside the bounds of fair play. But Plaintiffs do not rely on any new facts to show why their loss was clearly within the terms of coverage. If Plaintiffs believe there was a factual dispute as to whether the loss was covered, then why did they move for summary judgment on Count I?

In any event, Plaintiffs' "cross motion" is devoid of merit. Although they cite six different provisions of the statute cataloging unfair settlement practices, Plaintiffs are simply saying the same thing in six different ways – that Acadia unreasonably denied coverage. First, citing subsection (a) of the statute, *see* G.L.c. 176 D, §3(9)(a), they assert that concluding that the vessel was not stolen and therefore denying coverage

constituted "misrepresenting pertinent facts." However, to establish a violation of this subsection, it is necessary to show that Acadia deliberately misrepresented the extent of insurance coverage or otherwise acted in bad faith or with an improper motive. *Aquino v. Pacesetter Adjustment Co.*, No. 03-40285-FDS, 2005 U.S. Dist. LEXIS 40227, *29-30 (D. Mass. 2005); *United States ex rel. Metric Electric, Inc. v. Enviroserve, Inc.*, 301 F. Supp. 2d 56, 70 (D. Mass. 2003). Acadia's position that Dale Friedman stole cash rather than an "entire yacht," even assuming *arguendo* that it was "false," is not a misrepresentation of facts; at worst, it is simply Acadia's interpretation of the facts as presented by Plaintiffs. This is not actionable under Chapter 93A. *See Aquino, supra*, at *44 ("A false statement of opinion generally cannot constitute a deceptive act under Chapter 93A.").

Plaintiffs next assert violations of subsections (c) ("Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance polices") and (d) ("Refusing to pay claims without conducting a reasonable investigation based upon all available information"). However, Acadia's investigation was nothing if not prompt. Plaintiff's statement of loss is dated September 27, 2003, and Acadia denied coverage, after completing its investigation, on October 6, 2003. Plaintiffs argue that Acadia's alleged failure to research the legal requirements for transferring title rendered its investigation unreasonable; yet Acadia never claimed that title had been properly transferred. The question of who had legal title to the vessel at the time Friedman surrendered *possession* to the buyer is simply irrelevant to whether the vessel was stolen. "A reasonable investigator need not necessarily investigate that which it considers irrelevant." *Pediatricians, Inc. v. Provident Life & Accident Insurance Co.*,

3

965 F.2d 1164, 1172 (1st Cir. 1992); *See also Thomas v. Metropolitan Life Insurance Co.,* 40 F.3d 505, 511-12 (1st Cir. 1994) (fact that investigation could have been more thorough does not make it unreasonable). What Plaintiffs are really arguing is not that the investigation was unreasonable, but that the resulting denial of coverage was – which is quite another matter. There is no liability for failing to conduct a reasonable investigation as long as the duty to indemnify would not have been reasonably clear if a reasonable investigation had been conducted. *Behn v. Legion Insurance Co.,* 173 F. Supp. 2d 105, 113 (D. Mass. 2001); *Van Dyke v. St. Paul Fire & Marine Insurance Co.,* 388 Mass. 671, 678, 448 N.E.2d 357, 362 (1983).

The same is true with respect to Plaintiffs' claim under subsection (g). If the insurer's liability was not reasonably clear, subsection (g) does not apply. *Guity v. Commerce Insurance Co.*, 36 Mass. App. Ct. 339, 344, 631 N.E.2d 75 (1994). Moreover, this subsection deals with "offering substantially less than the amounts ultimately recovered"; in other words, it is intended to penalize "low balling." *Id.* It applies only to a markedly inadequate settlement offer, not to no offer at all. *Id.* Here, Acadia took the position after its investigation that there was no coverage; promptly notified Plaintiffs' of its decision; and stood by that decision. There is certainly no evidence of "low balling" by Acadia in this matter.

Equally inapplicable is subsection (n) ("Failing to provide promptly a reasonable explanation…for denial of a claim…"). Where, as here, the insurer has given a reasonably prompt response stating the basis in the insurance policy for denying the claim, there is no violation of this subsection. *See Van Dyke*, 388 Mass. at 676 n. 4;

4

*Winokur, Winokur, Serkey & Rosenberg, PC v. Commerce Insurance Co.*, 18 Mass. L. Rep. 9, 2004 Mass. Super. LEXIS 231, *10.

All of Plaintiffs' assertions boil down to a claimed failure to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," in violation of section 3(9)(f).  To establish liability, Plaintiffs had to prove, at a minimum, that Acadia's no-coverage determination was unreasonable.  *See Bolden v. O'Connor Café of Worcester, Inc*., 50 Mass. App. Ct. 56, 67, 734 N.E.2d 726 (2000).  The test is whether a reasonable person, with knowledge of the relevant facts and law, would necessarily conclude that Acadia was liable on the claim.  *M. DeMatteo Construction Co. v. Century Indemnity Co*., 182 F. Supp. 2d 146, 164 (D. Mass. 2001).  If reasonable persons could disagree, there can be no Chapter 93A liability.  *See Foisy v. Royal Maccabees Life Insurance Co*., 241 F. Supp. 2d 65, 68 (D. Mass. 2002); *Flood v. Midland National Life Insurance Co*., 419 Mass. 176, 184, 643 N.E.2d 439 (1994); *Guity*, 36 Mass. App. Ct. at 343-44.

An insurer must be allowed to make a good-faith coverage determination without fear of facing penalties under Chapter 93A just because a fact finder disagrees with that decision.  "So long as the insurer acts in good faith, the insurer is not held to standards of omniscience or perfection; it has leeway to use, and should consistently employ, its honest business judgment." *Peckham v. Continental Casualty Insurance Co*., 895 F.2d 830, 835 (1st Cir. 1990); *Bolden*, 50 Mass. App. Ct. at 67; s*ee also Massachusetts v. Furtado*, 428 Mass. 507, 510, 703 N.E.2d 208 (1998).

Plaintiffs have failed to offer any reasonable basis for finding a theft or loss of their vessel within the terms of Acadia's insurance coverage; *a fortiori*, they have failed

5

to show that no reasonable person could disagree with such a finding. Plaintiffs clearly authorized Dale Friedman to sell the boat and to turn it over to Pamela Jordan. They turned over physical possession of the boat, as well as the keys to the boat, to Friedman, with the understanding that once she paid for it, he would release it to her. They also furnished him with a signed bill of sale.[1] They authorized Friedman, as their agent, to deal directly with Ms. Jordan, to obtain the purchase payment from her, and then to relinquish the vessel. This is just what Friedman did.

      To have any leg to stand on, Plaintiffs must demonstrate that the authorization given to Friedman was somehow restricted. Hence, they now argue that "Dale Friedman did not have their authority to move the vessel from Sea Dog Yacht Sales until they had a bank check or certified funds and assurance that Kevin Gaffey's loan with Eastern Bank had been satisfied. PSF ¶21-29." (Plaintiffs' Memorandum of February 22, 2006, at 4). Unfortunately for Plaintiffs, there is no evidence that Plaintiffs actually limited Friedman's authority in this manner. All that is indicated in their statement of facts and their underlying testimony is that they expected that a closing would take place, that the sale proceeds would first be applied to paying off the debt on the vessel, and that they would then receive the balance. *See* PSF ¶¶21-29. They did not condition the release of the vessel on the prior occurrence of these events. They had no verbal agreement with Friedman to this effect, nor was this condition set forth in either the purchase and sale agreement or the bill of sale.

---

[1] Plaintiffs baldly assert that the "completed bill of sale" they signed was "incomplete," *see* PSF ¶23; but it was certainly sufficiently complete to constitute a valid and enforceable bill of sale. Indeed, it was more complete and definite in its terms than the bill of sale by which Plaintiffs ultimately disposed of the vessel on March 23, 2004. *Compare* Exhibits 8 and 12 to deposition of Kevin Gaffey.

Furthermore, a closing did occur, when Ms. Jordan paid the full sale price in exchange for the vessel. Plaintiffs did not expect to be physically present at the closing; otherwise they would not have signed the bill of sale and other related documents in advance. Plaintiffs did not and could not execute a title transfer in advance, because title was still held by Eastern Bank. The fact that *title* could not be transferred until the bank was paid, however, does not mean that Ms. Jordan could not obtain *possession* of the boat at an earlier point, once she had fully performed under the P & S agreement. Kevin Gaffey testified that he would have been happy if Friedman had called and said that he had a payment check for Plaintiffs and that the bank had been paid off. *See* K. Gaffey Dep. at 65.

Plaintiffs acknowledge that Friedman had at least apparent authority to sell and convey the vessel to Ms. Jordan (Plaintiffs' Memorandum of February 22, 2006, at 6). They have also conceded that Ms. Jordan did not steal the vessel (Plaintiffs' Memorandum of January 26, 2006, at 10). If it was not theft for Pamela Jordan to take the Aquasport, then, logically, it was not theft for Plaintiffs' authorized broker to let her take it. *See* G.L.c 106, §2-403(2) ("Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.").

Plaintiffs cannot get around the fact that Friedman absconded with the proceeds of the sale of the vessel, not the vessel itself. They cannot claim a "loss" of their vessel after its sale, which they had authorized, had been consummated. Moreover, even if they had not authorized the sale, the vessel was never lost. Plaintiffs knew where it was and could have retrieved it at any time. *See* DSMF ¶¶29-30. If Friedman had actually stolen the

7

vessel, then Jordan, even as a bona fide purchaser for value, could not have acquired any rights to it. *See, e.g., Textile Supplies, Inc. v. Garrett*, 687 F.2d 123, 127 (5th Cir. 1982); *Met-Al, Inc. v. Hansen Storage Co.*, 844 F. Supp. 485, 490 (E.D. Wis. 1994). Because Plaintiffs apparently were unsure of their legal position, however, they chose to sue their insurer rather than risk litigation with Jordan. See DSMF ¶31.

This brings us to Plaintiffs' problematic settlement with Ms. Jordan. By selling (or re-selling) the vessel in March of 2004, Plaintiffs plainly voided any coverage under the unambiguous terms of the policy. *See* DSMF ¶5. It is also fundamentally inconsistent to have sold a boat and to continue to claim that it has been "lost" due to "theft." Plaintiffs assert that they acted after Acadia had denied coverage, but they cite no authority for the proposition that even a wrongful denial of coverage constitutes a waiver of the policy provisions. This case does not involve third-party coverage where a wrongful refusal to defend leaves the insured to his own devices. By taking the position that the vessel had not been lost by theft, Acadia did not force Plaintiffs to resell the purportedly stolen vessel.[2]

Plaintiffs say they were obliged to mitigate their damages; but they could have reduced or eliminated their loss in a variety of other ways. First, as noted, they could have repossessed the vessel through self-help. Second, they could have obtained a court order that they had a superior right to the vessel. Third, instead of reselling the boat to

---

[2] Under Plaintiffs' theory, even if they had recovered the entire $27,000.00 purchase price, Acadia would still be required to indemnify them for $10,000.00 (since the boat's insured value was $37,000.00), in addition to any consequential damages, legal fees, and so-called mitigation costs. *See* Complaint, paragraph 26. This would be a bizarre result, yet it is entirely consistent with Plaintiffs' claim that they "lost" the vessel they had in fact sold.

Jordan for a reduced amount ($12,000.00), they could have settled with Jordan by buying back the vessel at a commensurately reduced price.  The fact that Plaintiffs were trying to replace the sale proceeds, rather than regaining the vessel, reinforces the conclusion that what was stolen was not the vessel, but rather the sale proceeds.

In the end, Plaintiffs have no evidence and no legal argument to support their claim of a theft of their vessel.  They merely presuppose the conclusion they are seeking, referring over and over to the "theft of the Gaffeys' vessel."  Such conclusory repetition is no substitute for reasoned analysis.

The undisputed facts show that the vessel was sold in accordance with Plaintiffs' agreement and authorization; the broker then ran off with the sale proceeds.  The loss of sale revenue is not covered under the Acadia policy, and the Court should not expand coverage beyond the policy's express terms.  *See, e.g., Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 281, 675 N.E.2d 1161, 1164 (1997); *Trustees of Tufts University v. Commercial Union Insurance Co.*, 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993); *Continental Casualty Co. v. Gilbane Building Co.*, 391 Mass. 143, 147, 461 N.E.2d 209 (1984).  It must be borne in mind that "insurance systems rely upon predictability of result and that predictability will be seriously diminished or destroyed if courts refuse to abide by limitations on insurance policies."  *FDIC v. National Union Fire Insurance Co.*, 205 F.3d 66, 73 (2d Cir. 2000); *Glusband v. Fittin Cunningham & Lauzon,* 892 F.2d 208, 212 (2d Cir. 1989).

CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' "Cross Motion" for Summary Judgment and should grant summary judgment in favor of Acadia on all claims.

Dated at Portland, Maine this 6th day of March, 2006

ACADIA INSURANCE COMPANY

By its Counsel:

/s/Leonard W. Langer

/s/Marshall J. Tinkle
BBO# 565513


TOMPKINS, CLOUGH, HIRSHON & LANGER, P.A.
Three Canal Plaza
P. O. Box 15060
Portland, ME  04112-5060
(207) 874-6700
lwlanger@tchl.com


**CERTIFICATE OF SERVICE**

I, Leonard W. Langer, hereby certify that on March 6, 2006, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send a notification of such filing(s) to the following:  David S. Smith Esq., Cianciulli & Ouellette, 163 Cabot St., Beverly,  01915, counsel for Plaintiff.

/s/  Leonard W. Langer


Acadia/Gaffey
Opposition to Plaintiffs Cross Motion for SJ